**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND OF TEXAS, CEDRIC BRYANT, TED GALANOS, LOUIS MAHER, and MICHAEL MCCULLOCH<br><br>*Plaintiffs*,<br><br>vs.<br><br>TENESHIA HUDSPETH *in her official capacity as County Clerk of Harris County, Texas;* and HARRIS COUNTY, TEXAS<br><br>*Defendant.* | CIVIL ACTION NO. 4:26-cv-00845<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## INTRODUCTION

1. Plaintiffs Cedric Bryant, Ted Galanos, Louis Maher, Michael McCulloch, and the National Federation of the Blind of Texas bring this action against Harris County on behalf of themselves and all others similarly situated under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq*. Plaintiffs seek to vindicate the rights of individuals with disabilities, who by virtue of their disabilities, cannot read and fill out paper ballots (collectively, individuals with "print disabilities")[1] and are therefore unable to vote by mail privately and independently.

---

[1] For semantic convenience throughout this Complaint, voters with disabilities who cannot complete paper ballots because of blindness, low vision, or manual dexterity impairments are referred as having "print disabilities."

2. The vote-by-mail ballots in Harris County are transmitted, marked, and returned on paper—a process that is inaccessible to voters with print disabilities in violation of federal laws.

3. Harris County voters with print disabilities, like Plaintiffs, can only vote by mail by relying on third-party assistance. As a result, Plaintiffs cannot vote by mail privately and independently, as other Harris County voters without print disabilities are able to do.

4. Plaintiffs, like other individuals with print disabilities, use assistive technology, such as screen reader software, that allows them to independently read and complete documents and forms electronically on their personal computers or other devices. If Harris County provided Plaintiffs with accessible vote-by-mail ballots electronically, Plaintiffs could use their assistive technology to read and mark their ballots privately and independently.

5. At least in 2024, the County provided vote-by-mail ballots electronically to overseas and military voters.

6. The County's refusal to extend this system to Plaintiffs continues its history of voting accessibility issues,[2] which is part of a broader, national history of discriminatory barriers to voting for individuals with disabilities.

7. These barriers have historically resulted in lower voter turnout among people with disabilities than among those without. But in recent years, as states have reduced these barriers for voters with disabilities, turnout among voters with disabilities has increased substantially nationwide.[3]

---

[2] Settlement Agreement Between the United States of America and Harris County, Texas, DJ No. 204-74-351,  https://archive.ada.gov/harris_co_sa.html (last visited October 16, 2025).

[3] L. Schur, D. Kruse & M. Ameri, *Fact Sheet: Disability and Voter Turnout in the 2022 Elections*, U.S. ELECTION ASSISTANCE COMMISSION RUTGERS UNIVERSITY 1–4 (July 2023), https://smlr.rutgers.edu/sites/default/files/Documents/Centers/Program_Disability_Research/Fact _Sheet_Disability_Voter_Turnout_2022_Elections.pdf

8. Harris County must implement a solution that makes available an accessible electronic vote-by-mail program to ensure voters with print disabilities have equal access and opportunity to vote by mail privately and independently in future elections.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs' claims arise under the ADA and Section 504. In addition, the Court has jurisdiction over Plaintiffs' claims for declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

10. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Defendant reside in this district.

## PARTIES

11. Plaintiff Cedric Bryant is paralyzed from the chest down from a spinal cord injury and does not have use of his hands. Mr. Bryant lives in Humble, Texas and is registered to vote in Harris County. He is eligible to vote by mail and would like to do so privately and independently in future elections.

12. Plaintiff Ted Galanos is blind and has manual dexterity disabilities resulting from the amputation of multiple fingers. Mr. Galanos resides in Houston, Texas and is registered to vote in Harris County. He is eligible to vote by mail and would like to do so privately and independently in future elections.

13. Plaintiff Louis Maher is blind and resides in Houston, Texas, and is registered to vote in Harris County. Mr. Maher is a member of the National Federation of the Blind of Texas. He is eligible to vote by mail and would like to be able to do so privately and independently in future elections.

14. Plaintiff Michael McCulloch is a legally blind individual who resides in Houston, Texas and is registered to vote in Harris County. Mr. McCulloch is a member of the National Federation of the Blind of Texas. Mr. McCulloch is eligible to vote by mail and would like to do so privately and independently in future elections.

15. Plaintiff National Federation of the Blind of Texas ("NFBTX") is a 501(c)(3) non-profit membership organization, incorporated under the laws of Texas, and composed of around 500 blind Texans and their families and friends. The organization promotes the general welfare of the blind including by assisting the blind in their efforts to integrate themselves into society on equal terms.

16. Some NFBTX members are registered to vote in Harris County, are eligible to vote by mail, and would like to vote by mail privately and independently in future Harris County elections.

17. Defendant Teneshia Hudspeth is the Harris County Clerk and is sued in her official capacity only. The Harris County Clerk's Office is responsible for the administration of elections through its Elections Department. The Harris County Clerk is the Chief Election Official in Harris County and is in charge of conducting election operations in Harris County.[4] Among numerous other duties, she is tasked with the administration of the vote-by-mail program in Harris County, including for military and overseas voters.

## **FACTUAL ALLEGATIONS**

### **Plaintiff Cedric Bryant**

18. Cedric Bryant is a resident of Harris County.

---

[4] *See About the County Clerk*, Harris County Clerk's Office, https://www.cclerk.hctx.net/ (last visited Oct. 29, 2025)

19. Mr. Bryant has a spinal cord injury that paralyzed him from the chest down and as a result does not have use of his hands.

20. He uses a Griffin Technologies MouthStick Stylus to navigate his personal devices, such as his Samsung Note S24 Ultra. He also uses voice commands on an Alexa Echo 5 to control light switches and other smart appliances in his home. To control his power wheelchair, Mr. Bryant uses head controls, moving his head backward, forward, left or right to maneuver.

21. Mr. Bryant is a registered Harris County voter who is eligible to vote by mail but has never done so because the paper ballot is inaccessible to him as a result of his disability.

22. Because the vote-by-mail paper ballot is inaccessible to him, Mr. Bryant has never attempted to vote by mail. Instead, Mr. Bryant votes in person, for which he also requires assistance because he cannot independently navigate the voting machines.

23. In the 2024 election, Mr. Bryant had to ask his father to transport him to his polling place and then assist him in voting once there. In prior elections, Mr. Bryant was forced to rely on election workers to assist him in the same manner.

24.  Currently, there is no option, either in person or by mail, for Mr. Bryant to vote privately and independently as an individual with a print disability.

25. Voting independently and privately is important to Mr. Bryant and he would like to be able to do so by mail because this would eliminate the barriers of securing transportation and requesting assistance while voting in-person at a Harris County vote center.

26. Mr. Bryant regularly uses a Griffin Technologies MouthStick Stylus to navigate through and complete documents and other forms on his phone electronically.

27. If Mr. Bryant received his vote-by-mail ballot electronically he would be able to navigate and complete it independently using his MouthStick Stylus.

**Plaintiff Ted Galanos**

28. Ted Galanos is a resident of Harris County.

29. Mr. Galanos is totally blind and cannot read printed materials because of his disability. As a result of multiple finger amputations on both his right and left hands, Mr. Galanos has limited manual dexterity and cannot hold a pen, operate buttons, or read braille type.

30. Mr. Galanos uses his chin to navigate DARCI USB switches on a PC, along with JAWS assistive technology, to read and complete documents and other forms on his computer. Mr. Galanos also uses his nose to navigate his iPhone while using VoiceOver to text and call.

31. Mr. Galanos is a registered voter in Harris County and has voted by mail in past elections but required assistance to do so.

32. Because the paper vote-by-mail ballot was inaccessible to him, Mr. Galanos' wife or assistant had to read and fill out the ballot for him. It is important to Mr. Galanos that he be able to vote as independently and privately as possible, but he is unable to do so in Harris County's current vote-by-mail system.

33. Mr. Galanos has voted in person in the past, but because he cannot use the voting machine buttons, he needed assistance from an election worker to use the voting machines. This has meant voting in person is not as independent or private as he would like.

34. Voting independently and privately is important to Mr. Galanos and he would like to be able to do so by mail in future elections.

35. If Mr. Galanos received an accessible vote-by-mail ballot electronically he would be able to read and complete it independently using his DARCI USB and JAWS.

**Plaintiff Louis Maher**

36. Louis Maher is a resident of Harris County.

37. Mr. Maher is totally blind and cannot read printed materials as a result of his disability. Mr. Maher is a member of NFBTX.

38. Mr. Maher regularly uses JAWS screen reader and Braille display to read and complete documents and other forms on his computer.

39. Mr. Maher is a registered Harris County voter who voted by mail in the 2025 general election and the 2024 presidential election, but required assistance to do so.

40.  Because the paper vote-by-mail ballot was inaccessible to him, Mr. Maher's wife had to read his ballot to him and fill it out for him.

41. Mr. Maher chose to vote by mail in these two elections after previously voting in person because he encountered issues with long lines and wait times for in person voting, as well as slow accessible voting machines.

42. Voting independently and privately is important to Mr. Maher and he would like to be able to do so by mail in future elections.

43. If Mr. Maher received an accessible vote-by-mail ballot electronically he would be able to read and complete it independently using his screen reader and Braille display.

**Plaintiff Michael McCulloch**

44. Michael McCulloch is a resident of Harris County.

45. Mr. McCulloch is legally blind and therefore has difficulty reading print and completing paper forms.  Mr. McCulloch is a member of NFBTX.

46. Mr. McCulloch regularly uses a Mac VoiceOver screen reader to read and complete documents and other forms on his computer electronically.

47. Mr. McCulloch is a registered Harris County voter and eligible to vote by mail.

48. He has voted by mail twice in previous elections during the COVID-19 Pandemic, but required his daughter's assistance both times in order to do so, sacrificing his privacy and independence.

49. Mr. McCulloch attempted to vote by mail during the 2024 presidential election but could not do so privately and independently because the paper vote-by-mail ballot was inaccessible to him. On October 5, 2024, Mr. McCulloch emailed Harris County's ADA voting assistance email address to inform them that he was unable to vote by mail privately and independently using the paper vote-by-mail ballot Harris County had sent him for that election. He requested that Harris County provide him an accommodation: an accessible ballot, sent to him electronically, and that he could return via email or U.S. Mail.

50. Mr. McCulloch did not receive a response to his October 5, 2024 request, or to his October 16, 2024, follow-up request.

51. On October 24, 2024, Disability Rights Texas ("DRTX") contacted Defendant Teneshia Hudspeth, the Harris County Clerk, via email regarding Mr. McCulloch's repeated, unanswered requests for an accommodation and asked that the County provide its response by October 29, 2024.

52. On October 29, 2024, Defendant Teneshia Hudspeth responded to DRTX via email stating that Harris County could not provide Mr. McCulloch with his requested accommodation because no such accessible, electronic ballot existed and the Texas Election Code prohibited such a ballot.

53. Mr. McCulloch ultimately voted in person for the November 2024 Presidential Election, requiring assistance to enter his unique access code that is given to each voter on a small receipt-sized paper. He then cast his ballot using the Audio Tactile Interface (ATI), which

provides a console with a rotary wheel to navigate through the ballot and other tactile buttons, including one for selecting his voting choices, as well as auxiliary-enabled headphones.

54. If Mr. McCulloch received an accessible vote-by-mail ballot electronically he would be able to read and complete it independently using his screen reader.

55. Voting privately and independently is important to Mr. McCulloch and he would like to do so privately and independently by mail in future elections. This would mean that he would not have to rely on anyone else for assistance, and he would not be forced to schedule a potentially unreliable paratransit ride one day in advance to go to the vote center and back.

**Plaintiff National Federation of the Blind of Texas ("NFBTX")**

56. Plaintiff NFBTX is a 501(c)(3) non-profit membership organization composed of blind Texans and their families and friends.

57. NFBTX promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality, and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation.

58. NFBTX's goal of complete integration of the blind into society on a basis of equality includes removal of legal, economic, and social discrimination. NFBTX advances its members' right to participate fully and equally in all aspects of their lives, including by ensuring its blind members can vote on equal footing with every other Texan.

59. Among other efforts, NFBTX has worked to ensure the blind have an equal opportunity to vote on the same terms as other voters by collaborating with developers of voting technology to ensure accessibility for the blind.

60. Plaintiff NFBTX has approximately 50 members, including Plaintiffs Louis Maher and Michael McCulloch, who are eligible to vote by mail in Harris County.

**Individuals with Print Disabilities Regularly Use Assistive Technology to Access and Complete Electronic Materials**

61. Because paper is inaccessible to them, individuals with print disabilities use assistive technology, such as screen reader software, and specialty keyboards in conjunction with that software, to access, read, and/or complete documents and forms electronically on personal computers or other devices. Screen reader software reads aloud, or displays on a refreshable Braille display, the visual information on the electronic page.

62. Electronic versions (e.g., Word or html) of print materials accessed through screen reader software are the only method by which blind individuals can independently access and complete printed materials.

63. Several screen reader software programs are available and commonly used by blind individuals, including Job Access With Speech (JAWS), NVDA, and VoiceOver.

64. The Web Content Accessibility Guidelines 2.1, Success Criteria A and AA provide an international consensus standard for making electronic materials accessible to blind and print disabled people using screen reader software. These guidelines do not depend on the type of screen reader software being used.

65. Similarly, individuals with print disabilities resulting from manual dexterity impairments use assistive technology, like Mr. Bryant, who uses The Griffin Technologies MouthStick Stylus, and Mr. Galanos, who uses the DARCI USB switches, to independently access and complete forms electronically.

**Harris County's Vote-by-Mail Program is Inaccessible to Harris County Voters with Print Disabilities**

66. The Texas Election Code provides that voters have the right to vote in secret. Tex. Elec. Code § 62.0115(b)(2).

67. The Texas Election Code also provides that no provision of the election code may be "interpreted to prohibit or limit the right of a qualified individual with a disability from requesting a reasonable accommodation or modification to any election standard, practice, or procedure mandated by law or rule that the individual is entitled to request under federal or state law." Tex. Elec. Code § 1.022.

68. The Texas Election Code further provides that a voter is eligible to vote by mail if they are: (1) 65 years or older; (2) disabled; (3) out of the county on Election Day and during the period of early voting by personal appearance; or (4) confined in jail, but otherwise eligible. Tex. Elec. Code §§ 82.001– 82.004.

69. But because vote-by-mail ballots are only provided in paper form, individuals with print disabilities who are eligible to vote by mail under Tex. Elec. Code §§ 82.002 are unable to do so without third-party assistance.

70. When a Harris County vote-by-mail voter receives the paper ballot by mail, the voter must open the larger outer envelope and locate the ballot inside—separate the two smaller envelopes (one marked as the "ballot" envelope and the other marked as the "carrier" envelope); read the ballot; and fill the ballot out by hand before completing the paper ballot return steps.[5]

71. Some or all of these steps are completely inaccessible to voters with print disabilities who are unable to read, mark, or otherwise manipulate a paper ballot without assistance. Instead,

---

[5] *Completing and Mailing your Carrier Envelope*, VoteTexas, https://www.votetexas.gov/voting-by-mail/carrier-envelope.html (last visited Oct. 29, 2025).

voters with blindness like Mr. Galanos, Mr. Maher, Mr. McCulloch, and other NFBTX members, require a sighted assistant to read the printed text on the paper vote-by-mail ballots and correctly fill out the selections for them.

72. Similarly, voters with manual dexterity impairments, like Mr. Bryant and Mr. Galanos, cannot independently remove the ballot and the return envelopes from the large, outer envelope, or fill out those ballots once they have done so.

73. Because Plaintiffs and other registered Harris County voters with print disabilities must rely on the assistance of another person to read and/or complete a paper ballot, they cannot vote by mail privately and independently as voters without disabilities are able to do.

74. If Plaintiffs received accessible vote-by-mail ballots electronically, they would be able to read, navigate, and complete them privately and independently.

**Harris County Already Provides Military and Overseas Voters with Their Ballots Electronically**

75. Upon information and belief, Harris County voters who are active members of the military or who live overseas currently have the option of receiving and marking their vote-by-mail[6] ballots electronically.

76. Electronic systems used for military and overseas voters, known as "Remote Accessible Vote-by-Mail" (RAVBM) systems are available and accessible and, if extended to voters with print disabilities, would allow them to use assistive technology to read and mark their ballots in a private, independent manner.

---

[6] Under UOCAVA, vote-by-mail is referred to as "absentee" voting.

77. But Harris County has refused to extend its electronic vote-by-mail ballot system for military and overseas voters to voters with print disabilities who could use it to vote privately and independently with their assistive technology as described above.

**Harris County Already Provides Voters on Space Flights with Electronic Ballots**

78.  The Texas Election Code mandates that all counties provide an electronic voting system and ballot to voters who are on a space flight during an election. Tex. Elec. Code § 106.001–002.

79. Space flight voters apply to vote using the same process as military and overseas voters and then are provided electronic ballots through the National Aeronautics and Space Administration's electronic transmission program and Near Space Network, which sends electronic ballots to persons in space who would otherwise be unable to vote on election day.[7]

80. Astronauts and Harris County residents, Butch Wilmore and Suni Williams were stranded aboard the Boeing Starliner ahead of the November 2024 Presidential Election. Both timely scanned their signed Federal Post Card Applications (FPCA) and transmitted them from the International Space Station to the Harris County Clerk's Office.

81. Once received and verified, the Harris County Clerk's Office sent Wilmore and Williams a test ballot electronically. Both astronauts successfully accessed the test ballots, and subsequently used their unique, secure password credentials to electronically mark and return their ballot from outer space.

---

[7] Kyle McClenagan, *Harris County Astronaut Still Plans to Vote in 2024 Election Despite Being Stranded in Space*, HOUSTON PUBLIC MEDIA (Sept. 19, 2024), https://www.houstonpublicmedia.org/articles/news/nasa/space/2024/09/19/500459/harris-county-astronaut-vote-from-space-iss-nasa/; *see also Voting From Space*, HOUSTON WE HAVE A PODCAST (Nov. 1 , 2024), https://www.nasa.gov/podcasts/houston-we-have-a-podcast/voting-from-space/.

**Another Texas County Has Extended its Remote Accessible Vote-by-Mail ("RAVBM")**
**System to Blind Voters**

82. In July 2020, NFBTX along with the Coalition of Texans with Disabilities and three individual plaintiffs, filed a lawsuit against the Texas Secretary of State under Title II of the ADA and Section 504 of the Rehabilitation Act challenging the Secretary of State's refusal to permit counties to provide accessible vote-by-mail ballots electronically. *See* Compl. 1–2, ECF No.1, *Seimien v. Hughs*, No. 1:20-cv-789 (W.D. Tex. filed July 24, 2020).

83. In her motion to dismiss that case, the Secretary of State argued that county elections officials, not her office, administered the vote-by-mail programs and she was thus not the proper defendant. *See* Mot. Dismiss at 9–10, ECF No. 19, *Seimien v. Hughs*, No. 1:20-cv-789 (W.D. Tex. filed Aug. 25, 2020).

84. In light of that representation by the Secretary of State, the NFBTX voluntarily dismissed the litigation and sued Bexar County and its election officials for that county's failure to provide accessible vote-by-mail ballots to voters with print disabilities. *See Johnson v. Callanen*, No. SA-22-cv-00409-XR (W.D. Tex. 2023).

85. Plaintiffs prevailed at summary judgment on their ADA claim. The court found that because Plaintiffs could not "complete and submit Bexar County's paper mail-in ballot on their own, they have been denied the benefit of voting privately and independently by absentee ballot because of their disabilities." And "[a]ccordingly, [Plaintiffs] are being denied an opportunity to vote absentee that is equal to the opportunity afforded to other eligible absentee voters." *Johnson v. Callanen*, No. SA-22-CV-00409-XR, 2023 WL 4374998 at \*7 (W.D. Tex. July 6, 2023)

14

86. The court granted Plaintiffs a permanent injunction, ordering Bexar County to provide accessible, electronic ballots to blind voters in all future elections. *See* Permanent Inj. Order 1–5, ECF 62, *Johnson v. Callanen*, No. SA-22-cv-00409-XR (W.D. Tex. 2023).

**Plaintiffs Have Requested that Harris County Provide Accessible Vote-by-Mail Ballots Electronically but the County has Refused**

87. Defendant Hudspeth and the County are aware that, absent a RAVBM system that delivers accessible vote-by-mail ballots electronically, Defendant has violated and continues to violate the rights of Harris County voters with print disabilities under Title II of the ADA and Section 504.

88. DRTX has informed Harris County that the current paper vote-by-mail ballots are inaccessible to voters with print disabilities, requested an accessible option, and been told none is available—notwithstanding that RAVBM systems that provide access are available.

89. DRTX initially contacted Defendant Hudspeth on February 1, 2024 via email, providing the ADA Title II and Section 504 legal basis on which the Harris County Clerk's Office could voluntarily expand access to voters with print disabilities using its existing program for military and overseas voters.

90. On February 14, 2024, DRTX provided the aforementioned email communication to the Harris County Attorney's Office. An Assistant County Attorney replied, stating that the Office would further review DRTX's request.

91. DRTX followed up with Defendant Hudspeth and Harris County Clerk's Office on March 12, providing a demonstrative video of Bexar County's RAVBM program.

92. DRTX followed up with the Harris County Attorney's Office on March 28, 2024.

93. DRTX met in person with Defendant Hudspeth and Hector DeLeon, a Deputy at Harris County Clerk's Office, to discuss the different kinds of RAVBM systems already in use, including that of Bexar County.

94. DRTX followed up with a recap of this meeting on May 24.

95. DRTX sent a follow up email on June 20, requesting an update on the County's consideration of an RAVBM system.

96. DRTX met virtually on July 29, 2024 with Defendant Hudspeth, Harris County Clerk's Office personnel and an Assistant Harris County Attorney, during which all attendees discussed the since-dismissed litigation against the Texas Secretary of State's Office, as well as the subsequent litigation and court order in Bexar County. DRTX followed up that day via email with further information on the litigation, as well as the U.S. Department of Defense EASE Grant awarded to Harris County for the implementation of an RAVBM system for military and overseas voters.

97. DRTX once again connected with Defendant Hudspeth and Harris County Clerk's personnel at the August 2024 Texas Secretary of States Conference. An Assistant County Attorney and Defendant Hudspeth stated that they would contact Texas Secretary of State elections officials directly to discuss the voluntary implementation of an RAVBM program for voters with print disabilities.

98. DRTX followed up multiple times via email through September 2024, demanding a response by September 29 as to whether Harris County Clerk's Office would voluntarily implement an RAVBM system. No further communication was received.

## CLASS ALLEGATIONS

99.  Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all other persons similarly situated.

100. The proposed class is defined as "all persons with print disabilities—disabilities that prevent them from reading, marking, holding, handling, and/or manipulating a paper ballot privately and independently—who are registered to vote in Harris County" (the "Class").

101. The proposed Class meets the Rule 23(a) requirements.

102.  The Class is so numerous that joinder of its members is impracticable. Based on current survey and census data, named Plaintiffs estimate that there are currently more than 100,000 eligible voters with print disabilities in Harris County. Within this class, there are also approximately 50 blind registered Harris County voters are members of the NFBTX.

103. The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class. Named Plaintiffs and putative Class members are all excluded from participation in, denied meaningful access to the benefit of, denied equally effective communication in, or otherwise subjected to discrimination in connection with Harris County's vote-by-mail program because of Defendant's failure to offer accessible vote-by-mail ballots electronically.

104. Named Plaintiffs seek prospective relief from these access barriers to Harris County's vote-by-mail program.

105. Named Plaintiffs have claims that are typical of, and not antagonistic to, the claims of other Class members. Named Plaintiffs and Class members are similarly harmed by the lack of accessible vote-by-mail ballots.

106. Named Plaintiffs and all Class members seek modifications to the administration of Harris County's vote-by-mail program to ensure that the process of receiving and completing a vote-by-mail ballot is fully accessible to members of the Class.

107. The claims of Named Plaintiffs arise from the same practices and conduct that give rise to the claims of all Class members and are based on the same legal theories.

108. Named Plaintiffs' claims are appropriate for class treatment pursuant to Rule 23(b)(2) because Defendant's policy and practice of failing to deliver accessible electronic vote-by-mail ballots is generally applicable to the Class as a whole, thereby making final declaratory and injunctive relief appropriate with respect to the Class as a whole.

109. Named Plaintiffs are adequate representatives of the Class defined herein because they are directly adversely impacted by Defendant's failure to offer accessible vote-by-mail ballots electronically.

110. Named Plaintiffs will fairly protect the interests of the members of the Class and are committed to pursuing this case diligently.

111. The interests of Named Plaintiffs are not antagonistic to, or in conflict with, the interests of the Class as a whole, and there are no material conflicts between Named Plaintiffs' claims and those of absent Class members that would make class certification inappropriate.

112. Named Plaintiffs will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type.

113. The attorneys representing the Class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions.

114. Defendant has acted and failed to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Title II of the Americans with Disabilities Act**
**(42 U.S.C. § 12131–12134)**
**On Behalf of All Named Plaintiffs and the Class**

115. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

116. Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

117. Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

118. When providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or provide "an aid, benefit, or service that is not as effective in affording equal opportunity" to obtain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

119. Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

120. Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with

disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities. . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

121. To be effective, "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

122. Auxiliary aids and services include "screen reader software; magnification software; optical readers; … accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

123. Because they are blind, Plaintiffs Ted Galanos, Louis Maher, Michael McCulloch, NFBTX members, and blind Class members are substantially limited in seeing and are individuals with disabilities protected by the ADA. *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108.

124. Because of his spinal cord injury, Plaintiff Cedric Bryant is substantially limited in performing manual tasks and is an individual with a disability protected by the ADA. *Id*.

125. Because of his manual dexterity disability, Plaintiff Ted Galanos is substantially limited in performing manual tasks and is an individual with disability protected by the ADA. *Id*.

126. Class members with print disabilities that impair their ability to perform manual tasks are individuals with disabilities protected by the ADA. *Id.*

127. Named Plaintiffs, NFBTX members, and Class members are qualified because they are registered to vote in Harris County, are eligible for vote-by-mail voting, and intend to vote in upcoming elections.

128. Named Plaintiffs, NFBTX members, and Class members are qualified to receive voting services from Defendant and are entitled to the protections afforded under the ADA. See 42 U.S.C. § 12131(2).

129. Defendant Hudspeth and Harris County are a public entity subject to Title II of the ADA. See 42 U.S.C. § 12131(1).

130. Voting by mail is a service, program, or activity provided by Defendant.

131. Defendant's vote-by-mail process discriminates against Plaintiffs and other voters with disabilities because these individuals cannot vote secretly, privately, and independently, but other voters without disabilities can and, in fact, Texas law requires that all voters be afforded that right.

132. Defendant has failed to provide Plaintiffs and other voters with print disabilities an opportunity to vote by mail that is equal to the opportunity provided to other voters that do not have disabilities.

133. Defendant could make reasonable modifications to the vote-by-mail ballot process by offering accessible vote-by-mail ballots electronically to Plaintiffs and other voters with print disabilities.

134. Defendant has failed to provide Plaintiffs and other voters with print disabilities auxiliary aids and services, such as accessible electronic ballots, necessary to afford them equally effective communication in the vote-by-mail process.

135. Defendant has excluded and continues to exclude Plaintiffs and other voters with print disabilities from participation in, and denied them the benefits of, or otherwise discriminated against them in, the service, program, or activity of voting by mail.

136. Accessible vote-by-mail systems are readily available, and such systems would allow independent, private vote-by-mail voting for people who are unable to fill out a paper ballot by reason of their print disabilities.

137. As a result of Defendant's actions and inactions, Plaintiffs, NFBTX members and Class members have suffered and will continue to suffer irreparable harm. They have suffered and continue to suffer from discrimination and unequal access to Defendant's vote-by-mail program. And in the absence of injunctive relief, Plaintiffs and those similarly situated will be denied their right to vote by mail privately and independently, a right afforded to those without disabilities.

138. Defendant's failure to meet their obligations to provide voters with print disabilities an equal opportunity to vote by mail is an ongoing violation of the ADA and its implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and to inflict irreparable injuries for which Plaintiffs have no adequate remedy at law.

139. The ADA authorizes injunctive relief, and Plaintiffs are entitled to injunctive relief as well as reasonable attorneys' fees and costs.

**COUNT II**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**(29 U.S.C. § 794 *et seq.*)**
**On Behalf of All Named Plaintiffs and the Class**

140. Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

141. Plaintiffs Bryant, Galanos, Maher, McCulloch, NFBTX members, and Class members are individuals with disabilities who are registered and eligible to vote by mail and thus are protected by Section 504.

142. Harris County receives federal financial assistance and thus is subject to Section 504. 29 U.S.C. § 794.

143. Section 504 mandates that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* § 794(a).

144. Section 504 defines "program or activity" to include "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" *Id.* § 794(b)(1).

145. Such federally funded entities may not, in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(b)(1)(i).

146. Such federally funded entities must also "insure that communications with their … beneficiaries are effectively conveyed to those having impaired vision and hearing," and, if the entity has 15 or more employees, must "provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance," *Id.* § 42.503(e)–(f).

147. Defendant Harris County is a local government that has more than 15 employees and receives federal financial assistance and thereby is subject to the requirements of Section 504.

148. Vote-by-mail voting is a service, program, or activity provided by Defendant.

149. Named Plaintiffs, NFBTX members, and Class members are people with disabilities under Section 504.

150. Named Plaintiffs, NFBTX members, and Class members are registered to vote in Harris County and are eligible to vote by mail and are thus qualified individuals with disabilities entitled to the protections of Section 504.

151. Defendant has failed and continues to fail to meet their obligations to provide voters with disabilities an opportunity to vote that is equal to the opportunity provided to other voters.

152. In denying use of an accessible vote-by-mail ballot system, Defendant refuses to provide an auxiliary aid or service that would allow Plaintiffs equal access to vote.

153. Accessible vote-by-mail ballot systems are readily available, and such systems would allow independent, private vote-by-mail voting for people who are unable to fill out a paper ballot by reason of disability.

154. Accordingly, Defendant has discriminated and continues to discriminate against Named Plaintiffs, NFBTX members, and Class members in their vote-by-mail program.

155. As a result of Defendant's actions, Named Plaintiffs, NFBTX members, and Class members have suffered and will continue to suffer irreparable harm; they have suffered and continue to suffer from discrimination and unequal access to Defendant's program, service, or activity of voting by mail.

156. In the absence of injunctive relief, Defendant will continue to deny Named Plaintiffs, NFBTX members, and Class members their right to vote by mail privately and independently in future elections.

157. Unless the requested relief is granted, Plaintiffs will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

158. Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

159. A permanent injunction prohibiting Defendant from violating the ADA and Section 504 and requiring Defendant to remedy the inaccessibility of the Harris County vote-by-mail program by allowing registered voters with print disabilities to use an accessible electronic vote-by-mail system;

160. A declaration that Defendant has violated and continues to violate the ADA and Section 504 by failing to offer accessible vote-by-mail ballots electronically to voters with print disabilities who are eligible to vote by mail;

161. An award of Plaintiffs' reasonable attorneys' fees, litigation expenses, and costs; and

162. Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

  /s/ Sashi Nisankarao
SASHI NISANKARAO
Texas State Bar No. 24102284
DISABILITY RIGHTS TEXAS
100 Glenborough Dr., Ste. 600
Houston, Texas 77067
(832) 209-1105 (phone)
(512) 454-3999 (fax)
sashin@disabilityrightstx.org

EVE L. HILL*
LAUREN J. KELLEHER*
MARISA LEIB-NERI*
BROWN GOLDSTEIN & LEVY
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com
lkelleher@browngold.com
mleibneri@browngold.com

ATTORNEYS FOR PLAINTIFFS

* Pro hac vice to be submitted